UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHANDS JACKSONVILLE
MEDICAL CENTER, INC.,

    Plaintiff,

v.                                                  CASE NO. 3:14-cv-930-J-34JBT

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, et al.,

    Defendants/Third-Party Plaintiffs,

v.

DEANNA BRANCH,

    Third-Party Defendant.
_____/

### **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Stay Pending Resolution of the Related Underlying State-Court Litigation ("Motion") (Doc. 17) and Plaintiff's Response thereto (Doc. 20).[2] The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution thereof. (Doc.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

[2] Third-Party Defendant Deanna Branch ("Branch") joined in the Motion. (Doc. 50.)

42.) On April 13, 2015, the undersigned heard oral argument on the Motion. (*See* Doc. 51.) For the reasons set forth herein, the undersigned respectfully recommends that the Motion be **GRANTED** and that this action be **STAYED** pending resolution of a related state court case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

   I.   **Background**

On June 15, 2011, Branch sustained injuries when she was struck by a motor vehicle operated by Trawn Gooch. (Doc. 20 at 2.) Branch was treated for her injuries as an indigent patient at Shands Jacksonville Medical Center, Inc. ("Shands"). (*Id.* at 1–2.) As a result, Shands filed with the Clerk of the Circuit Court, in and for Duval County, Florida, a claim of lien in the amount of $915,375.10 pursuant to Chapter 482, Jacksonville Municipal Ordinances ("JMO"). (Doc. 20 at 2, Doc. 21 at 13.) That chapter provides generally "for liens in favor of operators of hospitals in the city upon causes of action, suits, claims, counterclaims and demands accruing to patients in such hospitals, or their legal representatives, arising on account of illness or injuries of such patients for all reasonable charges for hospital care, treatment, and maintenance necessitated by such illness or injuries." *See* § 482.101, JMO. Additionally, section 482.107 provides a cause of action to a lienholder hospital if its lien is impaired. (*Id.*)

On August 6, 2012, Branch filed suit against Trawn Gooch and his employer, Florida Rock & Tank Lines, Inc., in the Circuit Court in and for Duval County, to

recover for her injuries (the "State Action").[3] (*Id.*) On January 2, 2014, Defendants in this action, National Union Fire Insurance Company of Pittsburgh, PA, and Lexington Insurance Company (collectively "Insurers") negotiated a pretrial settlement with Branch of her claims in the State Action. (*Id.*) In accordance with the terms of the settlement, the Insurers have and will pay proceeds directly to Branch, who must satisfy all outstanding medical expenses, including Shands' claim of lien. (*See* Doc. 17-2 at 1–2, 5.)

On June 24, 2014, Branch filed a supplemental complaint for declaratory judgment against Shands in the State Action to determine the validity and amount of Shands' lien.[4] (*See* Doc. 20 at 3, Doc. 23-1.) On July 7, 2014, Shands filed the complaint in the case at bar, originally in state court, against the Insurers, seeking damages for impairment of its lien. (Doc. 2.) Shands alleges that the Insurers impaired its lien by settling and paying Branch's claim without first obtaining a release or satisfaction from Shands, in violation of section 482.107, JMO. (*See* Doc. 2, Doc. 20 at 3, Doc. 21.) The Insurers removed the action to this Court (Doc. 1) and subsequently filed a third-party complaint against Branch for indemnification and

---

[3] The undersigned takes judicial notice of this related State Action, *Branch v. Florida Rock & Tank Lines, Inc.*, Case No. 16-2012-CA-008554, and all filings therein. *See Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (stating that a court may take judicial notice of public records, such as a complaint filed in another court).

[4] Although Branch's previous supplemental complaints were broader, her Third Amended Supplemental Complaint, which is currently operative, is limited to these two issues. (*See* Doc. 23-1.)

contribution (Doc. 34).[5]

Shands, the Insurers, and Branch all take the position that either the case at bar or the State Action should be stayed pending resolution of the other. The Insurers and Branch seek to stay the instant action pending resolution of the State Action pursuant to the *Colorado River* abstention doctrine. (Docs. 17 & 50.) Shands opposes this request and has filed a motion in state court to stay the State Action pending resolution of this action, which Branch opposes, and which is currently pending before that court. (*See* Doc. 20; Docs. 195 & 200 in State Action.)

### III. Standard

Under *Colorado River* there are essentially two inquiries. The first is whether the state and federal proceedings can be considered parallel. *See, e.g.*, *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1329–30 (11th Cir. 2004). Assuming the actions are parallel, the Court is required to weigh six factors in determining whether abstention is appropriate. These "factors [are] to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 1330 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)). As stated by the Eleventh Circuit in *Ambrosia Coal*, the factors are as

---

[5] The undersigned notes the somewhat inconsistent positions of both Plaintiff and Defendants between their arguments relating to the Motion and their actions herein. The Insurers removed this action but now argue that the state court is the better forum in which to decide the subject dispute. Shands resisted removal but now argues that this Court is the better forum. Nevertheless, this procedural posturing by both sides does not significantly alter the undersigned's analysis herein.

follows:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

368 F.3d at 1331.

Because federal courts have a duty to adjudicate any controversies before them, the inquiry is weighted against abstention. *Id.* at 1332. However, exceptional circumstances such as "a danger of a serious waste of judicial resources" will justify abstention. *See Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (quoting *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988)).

## A.   The State and Federal Proceedings Are Parallel

In *Ambrosia Coal*, the Eleventh Circuit rejected the argument that in order for *Colorado River* abstention to apply, there must be "identical parties, issues, and requests for relief." 368 F.3d at 1329–30. In response to that argument, the court stated: "[s]uch formalistic requirements would fly in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying for [sic] the *Colorado River* abstention principle." *Id.* at 1330. Thus, the court held that the "*Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same

5

issues." *Id.* The undersigned recommends that the state and federal proceedings are parallel.

### 1. The Issues are Substantially Similar

At bottom, both proceedings essentially concern the validity and amount of Shands' lien. In the State Action, Branch seeks a declaratory judgment determining 1) whether Shands' lien is valid; 2) that Shands is entitled to recover only its reasonable charges for medical care provided to Branch arising from the accident; and 3) the amount of reasonable charges that Shands is entitled to recover. (Doc. 23-1 at 5–6, Doc. 192 in State Action.) In this action, Shands seeks to recover damages for alleged impairment of its lien under the Jacksonville hospital lien ordinance. (Doc. 21.)

Although the subject ordinance provides a cause of action for lien impairment, it also provides that a hospital lien is authorized only for "reasonable charges" for related treatment, and that a specific procedure must be followed in order to perfect such a lien. *See* §§ 482.103, 482.104, 482.107, JMO. Therefore, if the case proceeds forward, the validity of Shands' lien will likely be determined in this action. Additionally, the ordinance provides that "the lienholder shall be entitled to recover damages" resulting from any impairment, and that it "may recover . . . the reasonable cost of hospital care, treatment and maintenance." *See* § 482.107, JMO. Therefore, the amount of Shands' lien, i.e., the reasonable cost of treatment related to the subject accident, would likely be determined in this action. Shands concedes as

much in its state court motion to stay the State Action, stating that "[i]dentical issues are framed by the pleadings and will necessarily be determined in the pending federal action," and that "[b]ecause both of the pending lawsuits involve some or all of the same issues, there is a risk of inconsistent rulings and a stay is appropriate." (Doc. 195 at 5 in State Action.)

Moreover, Branch's counsel submitted an affidavit in this action on April 1, 2015, stating that he is holding $947,337.29 in his trust account, which is sufficient to fully satisfy Shands' asserted lien of $915,375.10, pending resolution of the matter. (Doc. 49 at 4.) Shands essentially conceded at oral argument that if Branch pays Shands the reasonable value of its lien as agreed upon or as determined by the state court, the case at bar would be fully resolved. (Doc. 52 at 10–12.) The undesigned considers this a likely result of the Motion being granted.

Finally, the Insurers' third-party claims for indemnity and contribution against Branch in this action do not affect this analysis. It is unlikely that any dispute regarding the third-party complaint will ever have to be decided by the Court because Branch acknowledges her primary liability to Shands, and appears to be ready, willing and able to satisfy it. (Doc. 47 at 3.)

### 2.  The Parties are Substantially Similar

Although the parties in both actions are not identical, they are substantially the same. Branch and Shands are the only parties remaining in the State Action, while Branch, Shands, and the Insurers are parties to this action. However, it appears

inconsequential that the Insurers are not currently parties to the State Action. Specifically, given the likelihood that Branch will fully satisfy the reasonable value of Shands' lien as determined by the state court, or as ultimately agreed upon, it is very likely that the issues in both cases will be resolved entirely between Shands and Branch.[6]

Moreover, the Insurers have moved to stay, rather than dismiss, this action. Therefore, even if the State Action does not fully resolve Shands' lien claim, Shands will still have recourse against the Insurers in this action.[7] Accordingly, considering the issue of parallelism in a pragmatic and flexible manner in light of the circumstances, the undersigned recommends that the state and federal proceedings are parallel.

---

[6] Indeed, it is unclear why Shands has chosen literally to place the Insurers in the middle of a dispute that is essentially between it and Branch, and that Branch has shown every intention and ability of resolving without the need for this litigation.

[7] It is arguable that only then would Shands' claim against the Insurers even be ripe. In addition to the Insurers arguably raising the issue of ripeness at oral argument (see Doc. 52 at 25), the Court may raise ripeness as an issue *sua sponte* because it may be jurisdictional. See *Johnson v. Sikes*, 730 F.2d 644, 647 (11th Cir. 1984) ("The question of ripeness . . . may be raised *sua sponte* at any time" because it "involves both jurisdictional limitations . . . and prudential considerations arising from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction, even though jurisdiction in technically present."). Although Shands appears capable of making out a prima facie case of lien impairment under the subject ordinance, it is not clear how Shands will prove actual impairment or damages at this point given Branch's willingness and apparent ability to satisfy the lien. Therefore, ripeness may be an additional reason to stay, abate or even dismiss this action. However, the parties have not adequately briefed this issue. If this Report and Recommendation is not adopted, the undersigned alternatively recommends that the parties be directed to do so, particularly given the potential jurisdictional nature of this matter.

## B. The Six Factors Weigh in Favor of Abstention

Applying the relevant factors "in a pragmatic, flexible manner with a view to the realities of the case at hand" as required by *Ambrosia Coal*, 368 F.3d at 1330, the undersigned recommends that abstention is appropriate.

### 1. Whether One of the Courts Has Assumed Jurisdiction Over Property

This factor applies only to proceedings *in rem* where real property is at issue. *See Jackson-Platts*, 727 F.3d at 1141. Because neither proceeding is an *in rem* action involving real property, this factor does not apply.

### 2. The Inconvenience of the Federal Forum

*Ambrosia Coal* instructs that "[t]his factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." 368 F.3d at 1332. Given the close proximity of the Duval County Courthouse to the Jacksonville Federal Courthouse, this factor is neutral.

### 3. The Potential for Piecemeal Litigation

In *Ambrosia Coal*, the court directed that this factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Id.* at 1333. All parties take the position that allowing both actions to proceed would create piecemeal litigation, and that one of the two actions should be stayed pending resolution of the other. Specifically, in its motion to stay the State Action, Shands states that "[a] stay or

9

abatement is necessary in order *to avoid piecemeal litigation*, the risk of inconsistent verdicts and the waste of judicial resources," "to protect against the possibility of multiple inconsistent rulings on the same legal issues," and to conserve "substantial judicial resources." (Doc. 195 at 2 in State Action) (emphasis added).

The undersigned recommends that piecemeal litigation in these circumstances would be "abnormally excessive or deleterious." *See Ambrosia Coal*, 368 F.3d at 1333. First, although all parties agree that one action or the other should be stayed, the issue before this Court is not which action should be stayed, but only whether *this* action should be stayed. Although there is a motion to stay pending in the State Action, that case has not been stayed to date. It is deleterious and a waste of judicial resources to have two separate courts determine the validity and amount of Shands' lien. Furthermore, it is "abnormally excessive" to have the Insurers in the middle of a dispute, with the attendant fees and costs involved, that is primarily between two parties, Branch and Shands, who can likely resolve it between themselves. This is especially true given that Shands' lien impairment claim against the Insurers is arguably not even ripe.[8]

Should both actions proceed, there is a risk of inconsistent results, which would throw the rights, duties, and potential claims of the parties into turmoil. In *Colorado River*, the Supreme Court recognized the importance of "'(w)ise judicial administration, giving regard to conservation of judicial resources and

---

[8] *See supra* footnote 7.

comprehensive disposition of litigation.'" 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Therefore, this third factor, avoiding piecemeal litigation in two separate courts, weighs in favor of abstention in this case.

### 4. The Order in Which the Courts Obtained Jurisdiction

In addition to considering the dates on which the actions were filed, the Court must also consider "how much progress has been made" in each case. *Ambrosia Coal*, 368 F.3d at 1333. The State Action was filed first and has made significantly more progress than this action.

The State Action was filed on August 6, 2012. (Doc. 1 in State Action.) Shands has been involved in the State Action since at least November 14, 2013, when its attorneys filed a notice of appearance therein. (Doc. 135 in State Action.) Following Shands' appearance in the State Action, mediations were held on November 19, 2013, and September 5, 2014. (Docs. 138 & 171 in State Action.) On February 28, 2014, a "Motion to Specially Set Evidentiary Hearing for a Determination of Equitable Distribution of Settlement Funds as to [Shands'] Claimed Lien and to Determine the Validity and Reasonableness of Medical Charges Associated With the Claimed [Lien]" was filed in the State Action. (Doc. 148 in State Action.) Although Branch's initial supplemental complaint was not filed in the State Action until June 24, 2014, it appears that the instant dispute has existed in the context of the State Action since 2013.

This action was not filed until July 7, 2014, after the filing of Branch's initial supplemental complaint in the State Action and nearly eight months after Shands formally appeared in the State Action. (Doc. 1.) Moreover, Branch did not appear in this action until recently, i.e., March 27, 2015. (Doc. 47.) No case management order has been entered in this case, and there appears to have been little progress made to date. Therefore, this factor weighs in favor of abstention.

### 5. Whether State or Federal Law Applies

This factor weighs heavily in favor of abstention. Branch's claim for declaratory judgment in the State Action and Shands' claim for lien impairment in this action are both based on a Jacksonville municipal ordinance.[9] In addition, none of the affirmative defenses raised by any party in either action appears to implicate federal law. (*See* Doc. 25 at 4, Doc. 31 at 3–4, Doc. 47 at 4–5, Doc. 203 at 2–8 in State Action.) Shands does not argue otherwise. Because state law applies to all claims and defenses in both actions, this factor weighs heavily in favor of abstention.

### 6. Adequacy of the State Forum

In *Ambrosia Coal*, the court stated: "[t]his factor will only weigh in favor [of] or against abstention when one of the fora is inadequate to protect a party's rights." 368 F.3d at 1334. Shands' argument that "the state court is not in a position to protect Shands' rights because the issue of [the Insurers'] liability to Shands for lien

---

[9] Additionally, the Insurers' third-party claims against Branch in this case for contractual indemnity and equitable contribution, which are unlikely to ever be litigated, are matters of state law. (*See* Doc. 47 at 3.)

12

impairment is not before it" is unpersuasive and ignores practical reality. (Doc. 20 at 14.) To the contrary, the state court, which has had jurisdiction over the entire accident case since 2012, is well-positioned to decide lien issues under a local municipal ordinance between the two parties who are in a position to resolve the matter, Branch and Shands. As previously mentioned, it is questionable whether any dispute Shands has with the Insurers is even ripe.[10] Therefore, as a practical matter, Shands' rights are adequately protected in the State Action. Accordingly, this factor is neutral.

### IV. Conclusion

In short, the undersigned recommends that the Motion be granted. The two proceedings are parallel. Three of the six *Colorado River* factors weigh in favor of abstention, and the other three factors are either neutral or do not apply. Moreover, these factors are not a "mechanical checklist," but must be considered "flexibly and pragmatically." *Ambrosia Coal*, 368 F.3d at 1332. Considering these factors in that manner, the undersigned recommends that abstention is proper and advisable under *Colorado River.*

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 17**) be **GRANTED**.

---

[10] *See supra* footnote 7.

2.    This action be **STAYED** pending resolution of the State Action.[11]

**DONE AND ENTERED** at Jacksonville, Florida, on May 13, 2015.

*/s/ Joel B. Toomey*
_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

---

[11] *See supra* footnote 7 for alternative recommendation.